IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

NANCY COOK                                                    PLAINTIFF

v.                                                 CIVIL ACTION NO. 1:24-cv-00052-SA-RP

SAFECO INSURANCE COMPANY OF AMERICA,
A LIBERTY MUTUAL COMPANY                            DEFENDANT

ORDER AND MEMORANDUM OPINION

On February 9, 2024, Cook initiated this lawsuit when she filed her Complaint [2] asserting claims for negligence, breach of contract, and bad faith against Safeco Insurance Company of America, a Liberty Mutual Company ("Safeco") in the Circuit Court of Clay County, Mississippi. Safeco removed the case to this Court, premising federal jurisdiction upon 28 U.S.C. § 1332.

The Court entered an Order and Memorandum Opinion [53] denying Safeco's Motion to Dismiss [21] and granting Cook leave to amend her Complaint [2]. On February 12, 2025, Cook filed her Amended Complaint [54] asserting the same three causes of action. Now before the Court is Safeco's Motion for Summary Judgment [42]. The Motion [42] has been fully briefed and is now ripe for review.[1] Having considered the parties' filings, as well as the applicable authorities, the Court is prepared to rule.

---

[1] Cook's attorneys were separately granted approval to withdraw from her representation in this case. *See* [49, 58]. Cook's former attorneys filed a Response [45] to the pending Motion [42] prior to their withdrawal. On March 24, 2025, Cook notified the Court of her intent to proceed with the case as a *pro se* litigant. *See* [60]. On May 2, 2025, the Court entered an Order [65] allowing Cook the opportunity to independently respond to Safeco's Motion for Summary Judgment [42], as a supplement to her former attorneys' filed Response [45]. *See* [65]. Cook did not file any supplemental response.

*Relevant Background*[2]

This lawsuit arises out of Cook's submission of an insurance claim to Safeco for additional living expenses ("ALE") under her homeowner's policy.[3] The series of events leading to her submission of the ALE claim stem back to 2015.

In August 2015, Cook noticed that water was running on the floor in her home. The water originated from a leak in the bathroom. Her home was damaged as a result, prompting her to file an insurance claim with her carrier, Safeco. Thereafter, Safeco retained a third-party contractor, Buzzy Visgard with A-MC Construction, Inc. ("A-MC"), to provide an estimate for repairs of the damage to Cook's home. Safeco then issued payment to Cook based on that estimate on August 28, 2015.

In the Amended Complaint [54], Cook alleges that she hired A-MC to repair the damage to her home in reliance of Safeco's "endorsement" of A-MC's workmanship. [54] at p. 2-3.[4] Once A-MC completed the repairs, Cook alleges that the water leak continued and mold was discovered in the bathroom area. She then notified Safeco and A-MC of the defective repairs and alleges that Safeco approved additional work to be performed by A-MC. In her Amended Complaint [54], Cook provides detailed allegations regarding her attempts to have A-MC remediate its faulty work to no avail. The last documented communication between Cook and A-MC was on August 14,

---

[2] Much of this factual recitation mirrors the recitation in the Court's prior Order and Memorandum Opinion [53].
[3] The Court notes that Cook's homeowner's policy with Safeco provides coverage for "additional living expense and loss of rent." *See* [27], Ex. 1 at p. 27. This coverage is referred to by the parties as "ALE."
[4] Specifically, Cook alleges that a Safeco insurance agent named "Kyle" selected A-MC to prepare the initial estimate for repairs to her house and that, in doing so, "Kyle" and Safeco endorsed A-MC's workmanship.

2017. Cook then filed suit against A-MC on July 3, 2018 in the Circuit Court of Clay County, Mississippi.[5] Safeco was not made a defendant in that case.

Cook alleges that the mold issue was caused by the original water leak and that it persisted and spread to other parts of her residence during the time she attempted to have A-MC fix the problem. She also alleges that she contracted black mold disease from continuing to live in her home during that time. By the fall of 2018, her doctors advised her to relocate to a different residence. Cook alleges that she contacted Safeco in July of 2019 "because she knew that she had obtained additional coverage for living expenses under her policy." [54] at p. 11. She alleges that Mike Owings[6], a representative of Safeco, told her that he would make alternative living arrangements for her; however, Owings "never assisted her with her claim for residential living expenses." *Id*. At her deposition, Cook testified that she first started having problems with Safeco in either 2018 or 2019 "when they wouldn't give [her] a place to live after [her] doctor said [she] had to move out." [42], Ex. 1 at p. 12. When asked more specifically about the date, she testified that she believed it was in July 2019 when Safeco would not "give [her] a place to stay." *Id.* at p. 13.

Thereafter, Cook moved out of her home.[7] Cook testified that she received a check from Safeco in the amount of $5,000 in April 2021, which she understood represented payment for the mold found in her home. *See id.* at p. 29. In December 2022, Cook, through her legal counsel, sent

---

[5] The lawsuit against A-MC is styled *Nancy Cook v. A-MC Construction, Inc.*, Cause No. 2018-0137C and was still pending in the Circuit Court of Clay County, Mississippi as of the date the instant action was commenced.

[6] In her Amended Complaint [54], Cook refers to Mike Owings as "Mike Owen." In the parties' most recent pleadings, the parties identify this Safeco representative as "Mike Owings." *See* [43, 45].

[7] During her deposition, Cook testified that she moved out of her home in 2020. However, the Amended Complaint [54] alleges that she moved from her home on April 1, 2021 and includes a residential lease agreement as an exhibit, which bears that date. Ultimately, the exact date that Cook moved out of her home is unclear.

a demand letter to Safeco requesting payment for additional living expenses ("ALE") under her policy.[8] According to Cook's written discovery responses, she was first informed of Safeco's denial of her claim for additional living expenses on February 2, 2023. *See* [42], Ex. 3 a p. 9. Safeco denies that Cook is entitled to additional payment. Specifically, Safeco takes the position that the $5,000 payment made to Cook in April 2021 was the aggregate limit under Cook's policy for mold coverage, which included ALE pursuant to the policy language.

In its Motion for Summary Judgment [42], Safeco seeks dismissal of all claims arguing that all claims are barred by the statute of limitations and, notwithstanding that ground, that it has already paid Cook all amounts due under the policy terms. Cook opposes the Motion [42].

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct.

---

[8] Again, "additional living expenses" or "ALE" refer to the type of insurance coverage Cook sought payment for. Cook does not allege having received any prior payment for living expenses.

4

2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

Mississippi law applies because this action is before the Court on the basis of diversity jurisdiction. *See, e.g.*, *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) ("The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases[.]").

The Court will address each of Cook's claims in turn, beginning with her tort claim and then turning to the contractual claims.

I. Negligence

"In Mississippi, '[t]he elements of a negligence claim are duty, breach of duty, proximate cause, and damages.'" *State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 414 F. Supp. 3d 870, 874 (N.D. Miss. 2019) (quoting *Mladineo v. Schmidt*, 52 So. 3d 1154, 1162 (Miss. 2010)). "'To prevail in any type of negligence action, a plaintiff must first prove the existence of a duty.'" *Id.* (quoting *Enter. Leasing Co. S. Cent. v. Bardin*, 8 So. 3d 866, 868 (Miss. 2009)). "A 'duty' can be assumed by contract or a gratuitous promise accompanied by detrimental reliance, but… not all contractual duties are duties of care. *Clausell v. Bourque*, 158 So. 3d 384, 390-91 (Miss. Ct. App. 2015)

5

(citation omitted). "Put another way, the breach of a contract (whether described as 'negligent' or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law. There must be a duty of care 'fixed by law and independent of the contract.'" *Id.* at 391 (quoting *Hazell Mach. Co. v. Shahan*, 161 So. 2d 618, 627 (Miss. 1964)).

In her Amended Complaint [54], Cook appears to allege that Safeco was negligent through two acts of its employees: (1) Owings' alleged misrepresentation to Cook that she would receive coverage for ALE under her policy, which she allegedly never received and (2) Kyle's alleged endorsement of A-MC's workmanship in retaining A-MC to provide the insurance company with an estimate for repairs.

First, regarding Owings' alleged misrepresentation to Cook, the Amended Complaint [54] alleges that Owings told Cook that she "would be provided with living expenses coverage *consistent with her policy*." [54] at p. 13. At her deposition, Cook was asked about this specific allegation and confirmed that Owings merely referenced that she would receive insurance benefits according to her insurance policy:

> Q. And so I want to focus on the word "representation" for a minute. And, again, we've talked about this earlier, about your conversation with Mike Owen--or Mike Owings. And I just--I want to ask you one more time--I want to know every single misrepresentation that he ever allegedly made to you. I mean, what was everything wrong that he ever told you?
>
> A. Well, he acted like he would help me, but he never did. And I even talked to Gil, and Gil said he couldn't make him do anything, that that was over his head. I said, in other words, I'm paying you for insurance that you can't do nothing about.
>
> Q. So basically--and I understand. That's consistent with what you were saying earlier today, so I--

6

>    A.   Uh-huh (affirmative).
>
>    Q.   --hear you. So basically--I mean, as I read it here, he represented that you would be provided with living expense coverage *consistent with your policy*?
>
>    A.   Yes.

[42], Ex. 1 at p. 30-31 (emphasis added).

In the Court's view, based on Cook's own allegations and testimony, it does not appear Owings made any misrepresentation to Cook as to her ALE coverage in simply deferring to the policy. Rather, she concedes that Owings only represented that she would receive living expense coverage consistent with her policy.

Even if Owings had misrepresented Cook's coverage, Cook's argument in this regard overlaps with her breach of contract claim. In her Response [45], Cook argues that "[t]his case was initiated because after once approving Cook for ALE under her policy of insurance, Safeco subsequently failed to adhere to the opinion of Mike Owings, who told her that she had ALE coverage…" and "[a] recovery of ALE, consistent with her policy and with Owings['] affirmation of entitlement, is something Cook should have been able to rely on." [45] at p. 3-4. Cook does not allege that Safeco, through Owings, breached a duty "independent of the contract." *Clausell*, 158 So. 3d at 391. To the contrary, Cook appears to contend that Safeco did not honor her insurance policy in failing to pay her ALE claim in accordance with Owings' alleged misrepresentations. Accordingly, the Court finds that this portion of Cook's negligence claim is not actionable in tort.

Notwithstanding the above, even treating Cook's negligence claim on the above theory as actionable in tort, it still fails. The elements of a negligent misrepresentation claim are: "(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with negligence failed to exercise that degree of

7

diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reliance." *Int'l Ass'n of Certified Home Inspectors v. HomeSafe Inspection, Inc.*, 335 So. 3d 583 (Miss. Ct. App. 2022) (citing *Saucier v. Peoples Bank of Biloxi*, 150 So. 3d 719, 731 (Miss. Ct. App. 2014)).[9]

The first element of Cook's negligent misrepresentation claim is not met for the same reason the Court has previously stated—Cook does not identify *a fact* that Owings misrepresented. Cook also fails to meet the fourth element of her claim, which turns on whether her reliance on Owing's alleged misrepresentation was reasonable. *See id*. As Safeco points out, "Mississippi law is very clear: insureds are imputed with knowledge of the contents of their insurance policy, whether or not they have read the policy." *Schmidt*, 52 So. 3d at 1168. Under Mississippi law, this rule is known as the "duty-to-read" or "imputed-knowledge" doctrine. *Id.* at 1162.

In *Schmidt*, the Mississippi Supreme Court affirmed summary judgment against the insureds (plaintiffs) on their negligent misrepresentation claim based upon their insurance agent's alleged assurance of coverage, which "could have been cleared up by reading the policy." *Id.* at 1165. In making this determination, the Mississippi Supreme Court explained that the insureds "reasonably cannot have relied on the alleged assurance of coverage by [the insurance agent] that directly contradicted the plain language of the policy they had in their possession." *Id.* at 1166.

The Court need not delve into the details of the policy language to address this claim. Here, Cook never raises the argument that she did not possess her insurance policy. Assuming for Cook's benefit that the policy language differed from any alleged misrepresentation on the part of Owings, like the insureds in *Schmidt*, Cook could not have reasonably relied on Owings assurances that

---

[9] The Court notes that neither party addresses the elements of a negligent misrepresentation claim in their respective legal memoranda.

8

contradicted her policy. For this reason, as well as for the reasons the Court has explained above, Cook's negligent misrepresentation claim is due to be dismissed.

Next, the Court turns to Cook's negligence claim relative to Safeco's alleged endorsement of A-MC's faulty work. Safeco argues that this claim is barred by the statute of limitations. The Court agrees.

Mississippi has a three-year statute of limitations for negligence actions. *See Mac Long Homes, LLC v. Olvera Constr., LLC*, 385 So. 3d 835, 841 (Miss. Ct. App. 2024); MISS. CODE ANN. § 75-87-5. The statute of limitations for negligence begins to run when "the plaintiff should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent. *Sarris v. Smith*, 782 So. 2d 721, 725 (Miss. 2001).

This portion of Cook's negligence claim is rooted in A-MC's faulty workmanship. *See* [45] ("Cook relied on Safeco's (or Kyle's) opinion of Buzzy's work to her detriment."). Cook does not dispute that she hired A-MC in 2015 after Safeco approved her initial claim for property damage and that she was aware of A-MC's faulty work from 2015 to 2018. Resultantly, Cook filed a separate lawsuit against A-MC in state court on July 3, 2018 but did not name Safeco as a defendant in that action. Giving Cook the benefit of the latest date, she "should have reasonably known of some negligent conduct" on the part of Safeco in July 2018 when she filed suit against A-MC for its faulty work (liability for which she now attributes to Safeco for its alleged "endorsement" of A-MC). Cook filed the instant suit in February 2024—approximately five and a half years after she filed her lawsuit against A-MC. Her negligence claim based on Safeco's "endorsement" of A-MC and A-MC's work was brought well outside of the limitations period and is due to be dismissed for that reason. *See Sarris*, 782 So. 2d at 725.[10]

---

[10] Given Cook's *pro se* status, the Court has given her the benefit of the doubt in assuming that she has a valid negligence claim for the limited purpose analyzing the statute of limitations issue. Even looking past

9

For the reasons set forth above, Safeco's request for summary judgment is GRANTED as to Cook's negligence claims.

## II. Breach of Contract

Cook alleges that Safeco failed to pay her claim for ALE in breach of her insurance policy. Safeco argues that Cook's breach of contract claim is time-barred and, alternatively, that it fails under the plain language of the policy. The Court will address the arguments in turn.

### A. Statute of Limitations

"Insurance policies are contracts[.]" *S. Healthcare Servs., Inc. v. Lloyd's of London*, 110 So. 3d 735, 744 (Miss. 2013). In Mississippi, the statute of limitations for a breach of contract claim is three years. *Mac Long Homes, LLC v. Olvera Constr., LLC*, 385 So. 3d 835, 839 (Miss. Ct. App. 2024) (citing *Rives v. Ishee*, 335 So. 3d 1098, 1101 (Miss. Ct. App. 2022)). "In regard to insurance contracts, a specific refusal to pay a claim is the breach which triggers the cause of action and begins the statute of limitations running. *Young v. S. Farm Bureau Life Ins. Co.*, 592 So. 2d 103, 107 (Miss. 1991) (quoting *Donovan v. State Farm Fire and Cas. Co.*, 574 So.2d 285, 286 (Fla. 2d DCA 1991)).

Here, the parties dispute when the statute of limitations began to run on this claim. Cook appears to argue that the statute of limitations was not triggered until she moved out of her home, at which time her ALE claim was "vested" or "ripe." [45] at p. 3. However, Cook does not cite any authority to support that proposition. On the other hand, Safeco appears to argue that Cook's

---

the statute of limitations issue, the Court notes that the legal theory for Cook's negligence claim surrounding the alleged endorsement is unclear. The Court sees no need to address the merits of Cook's negligence claim in detail; however, it notes that Cook conceded that Safeco did not force nor pressure her to hire A-MC to conduct the repairs to her home. *See* [42], Ex. 1 at p. 26-27. During her deposition, Cook testified that she "assumed" A-MC could repair her home because the company conducted a repair estimate for Safeco. *Id*. at 27. Cook does not otherwise direct the Court to any evidence that Safeco warranted A-MC's work.

10

claim is time-barred based on two different events. First, Safeco argues that the limitations period began to run in 2019 when, "according to [Cook], Safeco failed to honor" her ALE claim. [43] at p. 8. Safeco also argues that the limitations period was trigged when Cook moved out of her home because Cook alleges in her Amended Complaint [54] that she had "again" requested ALE at that time and was denied. *Id*. at p. 7-8. The parties dispute the date Cook moved from her residence.

At her deposition, Cook testified that she first began to have problems with Safeco in July 2019:

> Q. When did you start having a problem with Safeco?
>
> A. Well, when I started having problems with them when [sic] they wouldn't give me a place to live after the doctor said I had to move out.
>
> Q. What year are we talking that you started having a problem with Safeco? When -- I mean, what year are we talking?
>
> A. Either '18 or '19. I don't recall which -- exactly which date.
>
> Q. Well, so, I mean, when did that problem -- I mean, how did that problem start? Was it -- I mean, are we talking one day you had a conversation with a Safeco representative or, I mean, how -- I mean, tell me -- I mean, what was the origin of your problem with Safeco?
>
> A. Because they wouldn't give me a place to stay.
>
> Q. Okay. And what year are we talking?
>
> A. It was in July I believe of '19.
>
> …
>
> Q. What Safeco representative were you talking to at that time?
>
> A. Mike Owings.

11

[42], Ex. 1 at p. 12-13.[11]

After this exchange, Cook appears to acknowledge that she submitted a claim for ALE in 2019:

> Q. So when you submitted -- when you were submitting your claim for ALE back in 2019 talking to Mike Owings, at that point, you had been dealing with just this continuous leakage and mold problem for years at that point, right?
>
> A. Yes.

*Id.* at p. 64.

Nonetheless, it is unclear whether Safeco "specifically refus[ed]" to pay Cook's ALE claim in 2019. *Young*, 592 So. 2d at 107. Cook was asked when she began to have *problems* with Safeco and she indicated that Safeco would not give her a place to live in July 2019. Although Cook appears to later acknowledge that she submitted an ALE claim in 2019, she does not testify whether that claim was specifically for the alternative living arrangements she was not given. Additionally, Safeco does not allege that it denied Cook's claim for ALE in 2019 and solely relies on the above testimony which, again, is unclear.[12] At this stage of the proceedings, the "inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to [Cook]." *River Birch, Inc.*, 920 F.3d at 964. The Court cannot conclude from the above testimony that Safeco denied Cook's ALE claim in 2019.

---

[11] The Court notes that neither party submitted a complete transcript of Cook's deposition. The Court cites an exhibit to Defendant's Motion [42] above. After this line of testimony, Cook is again asked about her conversations with Mike Owings in 2019, but the page ends just as she begins to answer the question. *See id.* at p. 13. The testimony resumes on the following page, which is out of chronological order and skips two pages. The exhibits to Cook's Response [45] provide no clarification.

[12] Safeco cites the Amended Complaint [54] but nothing Cook has alleged there supports a denial of her ALE claim in 2019.

Next, Safeco argues that Cook conceded in her Amended Complaint [54] that Safeco denied her ALE claim when she moved out of her house.[13] According to the Amended Complaint [54], Cook left her home on April 1, 2021. [54] at p. 12. Immediately following that allegation, Cook states: "Again, she requested the additional living expenses under her policy but was denied." *Id.* The parties primarily dispute the date Cook moved because this allegation appears to link the date she moved from her house to the date she concedes her ALE claim was denied.

At her deposition, Cook testified that she moved from her home and into a hotel in 2020, yet she was not asked if her claim had been denied at that time. *See* [42], Ex. 1 at p. 14. In her Response [45], Cook argues that she could not recall several dates at her deposition and references a lease agreement she entered into on April 1, 2021. She claims that was the date she moved.[14] In her written discovery responses, Cook states that "[s]he will testify that she requested her attorney to write a letter to Safeco in early 2021 requesting that the company afford her the additional living expenses when she moved out of her house. *She was denied the additional living expenses.*" *Id.*, Ex. 3 at p. 3; Ex. 4 at p. 3 (emphasis added). There was no specific date provided in that portion of her discovery responses. Notably, later in her written discovery responses, Cook states that she was first notified that Safeco denied her claim in February 2023:

> INTERROGATORY NO. 19: Identify the date on which Defendant first informed you that it was denying your request for additional living expenses.
>
> RESPONSE TO INTERROGATORY NO. 19: On or about February 2, 2023.

[42], Ex. 3 at p. 9; Ex. 4 at p. 15.

---

[13] "Allegations in a verified complaint may serve as competent summary judgment evidence." *Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir.2003)).
[14] Cook indicated in her supplemental discovery responses that she had moved on April 1, 2021. *See* [42], Ex. 4 at p. 2.

13

Cook also identifies a denial letter from Safeco bearing the same date in 2023 in her supplemental discovery responses:

> INTERROGATORY NO. 16: Identify all documents in support of your allegation that Safeco denied your request for additional living expenses on February 1, 2021.
>
> RESPONSE TO INTERROGATORY NO. 16: A copy of the letter sent by a Safeco agent denying Cook's request for additional living expenses has been provided by the Defendant dated approximately February 2, 2023.

*Id.*, Ex. 4 at p. 14.

Neither party provides the Court with a copy of any denial letter from Safeco during the time frame being analyzed (2019-2023).

Overall, there are several inconsistencies surrounding the date when Safeco denied Cook's ALE claim. Again, it is not clear whether Safeco denied the claim in 2019. It is also unclear when Cook moved out of her home at which time she appears to acknowledge that her claim was denied. Cook filed the instant lawsuit against Safeco on February 9, 2024. A portion of the inconsistent dates would render her claim time-barred while other dates would not. Irrespective of those issues, Cook's sworn discovery responses indicate that she first learned that Safeco denied her ALE claim on February 2, 2023 via written letter. That date would place her claim well within the limitations period. For these reasons, the Court finds that a question of fact exists as to the date Safeco denied Cook's ALE claim and therefore the Court cannot conclude that this claim is time-barred.

  B. *Cook's Policy*

Looking past the statute of limitations issue, Safeco argues that Cook's breach of contract claim fails because Cook was not entitled to ALE under the terms of her insurance policy.

The Court is compelled to first note that Cook does not address the merits of her breach of contract claim in her Response [45]. Cook acknowledges Safeco's argument on the first page of

14

her Response [45] but thereafter only provides argument with respect to the statute of limitations issues surrounding all of her claims. *See* [45] at p. 1. In fact, the only portions of Cook's response wherein she references her insurance policy read as follows:

> While the language in the policy is clear, and as a matter of law the policy-holder is bound by the clear meaning of the policy, an insurer who, by its actions, makes it easier for the insured to rely on a surrogate, who stands in the place of the company, Cook relied on Safeco's (or Kyle's) opinion of Buzzy's work to her detriment. Her opinion of the significance of the surrogate in assuming to perform Safeco's work, raises a question of fact which remains disputed.
>
> This case was initiated because after once approving Cook for ALE under her policy of insurance, Safeco subsequently failed to adhere to the opinion of Mike Owings, who told her she had ALE coverage which could assist her situation – physicians' orders for her to leave her residence due to health concerns.
>
> …
>
> A recovery of ALE, consistent with her policy and with Owings affirmation of entitlement, is something that Cook should have been able to rely on. But she could not. Safeco's willful disregard of Cook's problems and its determination to deny her ALE represents a failure in dealing in good faith with the insured, a lack of respect for the insured, and a failure to investigate Cook's complaints fairly, promptly, and within claims-handling standards of the industry.

*Id.* at p. 3-4.

Though not totally clear, all of Cook's arguments that reference her insurance policy appear to be related to either her negligence claims or bad faith claims against Safeco. Cook does not once cite the copy of the insurance policy much less identify what part of her insurance policy Safeco breached. Accordingly, the Court finds that Cook has abandoned her breach of contract claim. *See Tubwell v. Specialized Loan Serv., LLC*, 2019 WL 1446362, at *3 (N.D. Miss. Mar. 29, 2012) (noting that the non-movant's failure to respond to the moving party's motion for summary judgment on certain claims "amounts to an abandonment of [those] claims"); *Sanders v.*

*Sailormen, Inc.*, 2012 WL 663021, at *3 (N.D. Miss. Feb. 28, 2012) (collecting cases) ("Failure to address a claim results in the abandonment thereof.").

Even if Cook had not abandoned her breach of contract claim, the claim still fails.

"'The language and provisions of insurance policies are viewed as contracts and are subject to the same rules of interpretation as other contracts.'" *Mississippi Farm Bureau Cas. Ins. Co. v. Hardin*, 323 So. 3d 1034, 1037 (Miss. 2021) (quoting *Hayne v. The Doctors Co.*, 145 So. 3d 1175, 1180 (Miss. 2014). "The analysis must begin with the language of the policy, which 'either affords coverage or not, based upon application of the policy language to the facts presented.'" *Hayne*, 145 So. 3d at 1180 (quoting *Hankins v. Maryland Cas. Co./Zurich Am. Ins. Co.*, 101 So. 3d 645, 653 (Miss. 2012). "Because insurance policies are creatures of contract, if the language is clear and unambiguous, then the language of the policy must be interpreted as written." *Id.*[15]

The parties do not dispute that Cook's ALE claim derived from discovery of mold in her home. In her written discovery responses, Cook was asked to identify all the losses she contended were covered under her policy. In response, she identified two claims:

> INTERROGATORY NO. 3: Identify all losses that you contend have been "covered losses" to your property located at 176 Pinewood Road, West Point, MS since you purchased it.
>
> SUPPLMENTAL RESPONSE TO INTERROGATORY NO. 3: Cook made a claim against Safeco for damage to her residence on Pinewood that occurred on or about August 28, 2015, the result of a water leak. Safeco suggested A-MC as a contract and Cook followed the suggestion of Kyle (?) an agent of Safeco. A-MC attempted to repair the water leak from on or about August 28, 2015. The attempts to repair the water leak ended on approximately A[p]ril 9, 2019. The second claim made against Safeco relative to her policy on the Pinewood residence is her current claim for ALE.

---

[15] "Generally, when policy language is ambiguous, the Court construes policies 'liberally in favor of the insured… [and] strongly against the drafter.'" *Id.* at 1181 (quoting *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998)). As noted, Cook does not raise any argument addressing the merits of her breach of contract claim. It follows that she does not raise any argument as to ambiguity of the language in her policy.

[42], Ex. 4 at p. 3.

In response to a separate interrogatory, Cook identifies herself as a potential witness at trial and elaborates on the basis for her ALE claim:

> SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:
> … Cook will also testify that as a result of A-MC's attempted repair, black mold began to accumulate in her house, she got ill, was encouraged to move from her house, didn't want to, but when her physician told her that if she did not move he would not treat her any longer because her condition was terminal unless she separated herself from the mold, she determined that she had to move (approximately January or February 2021).

*Id.* at p. 2-3.

At her deposition, Cook testified that Safeco paid her $5,000 in April 2021 for the mold found in her house:

> Q. So do you recall that in April of 2021, Safeco issued you a check in the amount of $5,000? Do you remember that?
>
> A. I do.
>
> Q. Okay. What was your understanding of what that check was for?
>
> A. It was just a check because mold was found in my house is all I knew it was for.
>
> Q. Okay. I mean, what prompted Safeco to issue that check? I mean, had you made a request for payment of some kind? I mean, what communications had you had with Safeco leading up to that?
>
> A. I don't remember. I believe Gil told me that we would -- we could get a 5,000-dollar check. I think I'm correct on that, now.

*Id.*, Ex. 1 at p. 28-29.

Safeco argues that Cook's ALE claim arising from the mold in her home is subject to the aggregate mold limit of $5,000 pursuant to her policy. In other words, Safeco contends that Cook is not due benefits beyond the $5,000 mold payment she received in April 2021. According to the

17

Policy Declarations, Cook's policy limit for Fungi, Wet or Dry Rot, or Bacteria coverage was in the amount of $5,000. *See* [27], Ex. 1 at p. 4. Under the provision outlining the coverage for Fungi, Wet or Dry Rot, or Bacteria, the policy provides in pertinent part:

> The limit of liability stated in your Policy Declarations for Fungi, Wet or Dry Rot, or Bacteria is the most we will pay for the total of all loss or costs for Coverages A, B, C and D, and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

*Id.* at p. 30.

Coverage for ALE is outlined in the "Coverage D" section of the policy. *See id.* at p. 27 ("Coverage D—Additional Living Expense and Loss of Rent"). Based on the plain language of these provisions, Cook is not entitled to ALE benefits beyond the mold payment she received from Safeco in April 2021, which was the policy limit for that covered peril. Again, the parties do not dispute that Cook's ALE's claim derives from the presence of mold in her home and that she had to move because of the mold.

Additionally, "[u]nder 'named perils' coverage, the burden of proof rests with the insured 'to prove that the damages sustained were covered by the peril insured against…'" *Hardin*, 323 So. 3d at 1037. Here, Cook does not argue that her damages associated with her ALE claim were caused by any other peril covered under her policy besides the mold in her house.[16] She likewise makes no argument that any other provision of her policy provides her with a basis for additional payment. The conclusory allegations and unsubstantiated assertions made in her Response [45] are insufficient to overcome summary judgment. *See Nabors*, 2019 WL 2617240 at *1 (citations omitted). Cook's breach of contract claim is due to be dismissed.

---

[16] To the contrary, Cook also blames A-MC's faulty work in failing to repair the original leak in her house, which persisted for some time. *See* [42], Ex. 1 at 64. Her insurance policy explicitly excludes coverage for damages caused by faulty repair and workmanship, as well as continuous leakage of water. *See* [27], Ex. 1 at pp. 21-22, 24.

18

To the extent Cook argues that her policy was modified by Owings' alleged misrepresentations that Safeco would otherwise pay her ALE benefits in addition to the mold payment, still her claim does not advance. *See Hayne*, 145 So. 3d at 1183 (explaining that even if a representative of the insurer confirms coverage that is not afforded by the policy "the plain language of the policy must control."); *Oaks v. Sellers*, 953 So. 2d 1077, 1082 (Miss. 2007) ("[P]arol evidence to vary the terms of a written contract is inadmissible… [A] person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.").

### III. Bad Faith

Finally, the Court turns to Cook's bad faith claim. To prove a bad faith claim, Cook bears the burden of proving "'that the insurer either lacked a legitimate or arguable basis for denying [her] claim or that it committed a willful or malicious wrong or acted with gross and reckless disregard for [her] rights.'" *Liberty Ins. Corp. v. Tutor*, 309 So. 3d 493, 507 (Miss. Ct. App. 2019) (quoting *Chapman v. Coca-Cola Bottling Co.*, 180 So. 3d 676, 681 (Miss. Ct. App. 2015)).

Cook has failed to show that her ALE claim was in fact owed for the reasons the Court has explained above. Resultantly, she cannot show that Safeco lacked a legitimate or arguable basis for denying her claim. *See Wise v. United Servs. Auto. Ass'n*, 861 So. 2d 308, 319-20 (Miss. 2003) (holding that "without doubt" the insurer had a legitimate and arguable basis in law for denying insured's claim where the insured's uninsured motorist claim was not owed). Cook passingly argues that the conduct of Safeco's representative (Owings) amounts to "disregard," but the Court need not address that argument extensively. [45] at p. 4. The Court rejects that contention for the same reasons the Court rejected her negligence claim above.

*Conclusion*

For the reasons set forth herein, Safeco's Motion for Summary Judgment [42] is GRANTED. All claims are dismissed *with prejudice*. A Final Judgment consistent with this Order and Memorandum Opinion will be entered this day. This CASE is CLOSED.

SO ORDERED, this the 6th day of August, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE